William Mattinson and Hazel R. Mattinson v. Commissioner.
Mattinson v. Commissioner
Docket No. 88205.
United States Tax Court
T.C. Memo 1962-167; 1962 Tax Ct. Memo LEXIS 142; 21 T.C.M. (CCH) 932; T.C.M. (RIA) 62167; July 13, 1962
William Mattinson, 2037 Crestmont Dr., Birmingham, Ala., for the petitioners. Glen W. Gilson II, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent determined a deficiency in income tax against the petitioners for the year 1958 in the amount of $120. By amended answer, respondent claimed an increased deficiency in the amount of $61.46, or a total deficiency of $181.46. The questions presented are (1) whether petitioners are entitled to a dependency exemption for the father of petitioner William Mattinson, and (2) if the father is not a dependent, whether petitioners are entitled to a medical expense deduction in the amount of $307.33, which is included in payments made in behalf *143 of the father. Findings of Fact Some of the facts have been stipulated and are found as stipulated. Petitioners are husband and wife, and residents of Birmingham, Alabama. They filed their joint income tax return for the taxable year 1958 with the district director of internal revenue for Alabama. William Mattinson, hereafter referred to as petitioner, was employed as a salesman by the Transmission Supply Company of Birmingham. The joint return showed that he received compensation in the amount of $6,600 in 1958, and that income tax of $594 had been withheld. Besides their own exemptions and a depedency exemption for their son, petitioners claimed dependency exemptions for petitioner's father and mother, George and Elizabeth Mattinson. On two schedules attached to the return petitioners itemized their deductions. "Contributions" totaled $40; "Interest" in the amount of $858.21 was shown to have been paid to a savings and loan concern; "Taxes" were shown in the total amount of $368.48, which included "Ad valorem" tax of $119.60 and such other taxes as state income tax, sales tax, alcoholic beverage tax, unemployment tax and automobile tag. Except for state income tax, all *144 of the taxes were also shown as deductions for state income tax purposes, with an additional amount of $94.50 for social security tax. Medical and drug expenses were itemized in the aggregate amount of $571.33, of which $116.93 represented drugs and $454.40 represented medical expense. On the return, the cost of drugs in excess of one percent of $6,600 was shown as $50.93 and with medical expense of $454.40 totaled $505.33, which less $198, 3 percent of $6,600, amounted to $307.33, the amount claimed as a deduction for medical expense. A deduction of $9.35 for the cost of a "safe deposit box" was claimed under the heading Other Deductions. During the year 1958 petitioner's parents lived in their own home in Wylam, Alabama, which was free of any debt. Rental value of their home was not less than $35 per month. During the year George Mattinson received monthly a social security check in the amount of $74.30, or a total of $891.60 for the year. Elizabeth Mattinson also received a social security check each month. It was in the amount of $37.20, or a total of $446.40 for the year. The aggregate amount both received from the checks during the year was $1,338. In November 1958, George *145 Mattinson fell and broke his hip. Petitioner paid all of the medical expenses pertaining thereto. Of the medical expenses itemized on the return, $18.37 was for Elizabeth Mattinson and $391.77 was for George Mattinson. Petitioner usually bought groceries for his parents once a week. The parents sometimes purchased a few items from a small grocery that was within a block of their home. Petitioner also gave his mother some money with which to buy clothing. At no time did he use any of his parents' money in shopping for them. During 1958 petitioners made monthly payments of between $119 and $120 on their home. The payments covered principal, interest and taxes, but not insurance. In 1957, petitioner started a power transmission equipment business, in connection with which he operated an automobile. Petitioners also owned another automobile which during 1958 was operated by petitioner's wife. Opinion Petitioner contends that he is entitled to a credit against net income of $600 for his father as a dependent. No question is raised with respect to credit for the mother. In order to be entitled to the dependency credit claimed, petitioner has the burden of establishing that he *146 furnished more than one-half of his father's support for the taxable year 1958. Petitioner's parents lived in their own debt-free home, which had a rental value of at least $35 a month, or a total value of $420 a year. They received social security checks monthly which amounted to an aggregate total of $1,338 for the year. Petitioner estimated that during the year he spent approximately $1,500 "for groceries, cash, clothing, et cetera" for the support of his parents. He was unable to show that he spent such an amount or how it was spent. It is not shown that the $1,500 was in addition to or included the amount expended for his father's medical expenses, an amount that appears to have definitely been expended by petitioner on his father. If petitioner is correct in his estimate of his support, it appears that his father and mother had more income on which to live than the three of petitioner's family. On petitioner's vague and uncorroborated testimony, we are unable to accept that as a fact. Petitioner has failed to prove that the respondent erred in disallowing the dependency credit claimed for his father. Since it is not proven that the father was a dependent, it is a matter *147 of law that petitioners are not entitled to a deduction for medical expense made on behalf of him. Section 213(a), Internal Revenue Code of 1954. While the amount expended was $391.77, their net medical deduction was only $307.33. As they are not entitled to that benefit, the deduction is disallowed. Decision will be entered under Rule 50.